Cite as 2019 Ark. App. 368

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV

**No.** CR-19-57

| | |
|---|---|
| GREGORY DWAYNE LEWIS III | **Opinion Delivered:** September 11, 2019 |
| APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NOS. 46CR-17-737 & 46CR-17-738] |
| V. | |
| STATE OF ARKANSAS | HONORABLE BRENT HALTOM, JUDGE |
| APPELLEE | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## PHILLIP T. WHITEAKER, Judge

The appellant, Gregory Dwayne Lewis III, files this interlocutory appeal of a Miller County Circuit Court order denying his motions to transfer two cases to the juvenile division of the circuit court. On appeal, Lewis's counsel has filed a motion to be relieved as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Rule 4–3(k) of the Rules of the Arkansas Supreme Court and Court of Appeals, explaining that an appeal of the transfer decision would be without merit. The motion is accompanied by an abstract, addendum, and brief concerning the proceedings related to the motion to transfer. Counsel explained in the brief that the only adverse ruling pertinent to this interlocutory appeal was the denial of the motion to transfer and contended that there was nothing in the record that would arguably support an appeal.[1]  We agree.

---

[1]He also addressed two other objections made at the juvenile-transfer hearing, but neither were decided adversely to Lewis.

Procedurally, the State filed two separate charges against sixteen–year–old Lewis in November 2017. In Miller County Circuit Court Case No. 46CR-17-737, Lewis was charged as an adult with one count of aggravated assault and two counts of committing a terroristic act in violation of Arkansas Code Annotated section 5-13-310(a)(1) (Repl. 2013) (shooting at an occupied conveyance). In Miller County Circuit Court Case No. 46CR-17-738, Lewis was also charged as an adult with seven counts of committing a terroristic act in violation of section 5-13-310(a)(1) (shooting at an occupied conveyance), twenty-two counts of aggravated assault, and two counts of second-degree battery.

Lewis filed motions to transfer these matters to juvenile court. The State responded, arguing that Lewis was charged with very serious felonies; that the crimes were committed in an aggressive, violent, premeditated, and willful manner; that they were crimes against persons; and that Lewis directly participated in the crimes.[2] After a hearing, the circuit court denied Lewis's motions to transfer, and Lewis has appealed. Counsel has requested permission to withdraw alleging that the appeal has no merit. In considering counsel's request, we will now consider the law pertinent to motions to transfer matters from the criminal division of the circuit court to the juvenile division of the circuit court, as well as the matters presented to the circuit court below.

Under Arkansas law, a prosecuting attorney has discretion to charge a juvenile sixteen years of age or older in the criminal division of the circuit court if the juvenile has engaged in conduct that, if committed by an adult, would be a felony. Ark. Code Ann. § 9-27-

---

[2]Lewis confessed to the crimes.

318(c)(1) (Repl. 2015). However, a defendant charged in the criminal division may file a motion to transfer to the juvenile division, and the court in which the criminal charges have been filed must conduct a hearing to determine whether to transfer the case. Ark. Code Ann. § 9-27-318(e).

Here, Lewis filed such a motion challenging the jurisdiction of the criminal division of the circuit court over the charges and alleging that the juvenile division was the more appropriate jurisdiction. The circuit court then conducted an evidentiary hearing as required by statute. As the moving party, Lewis bore the burden of proving that the case should be transferred. *Z.T. v. State*, 2015 Ark. App. 282.

The circuit court in this case heard evidence that Lewis was only sixteen years old at the time he was charged with the offenses and had no significant juvenile history. However, Lewis was part of an allegedly violent street gang known as "Had Azz," had participated in and accepted responsibility for the commission of multiple violent felonies that occurred on two separate occasions, and his actions had resulted in two people being shot. The court was also presented with evidence that during the pendency of the charges and while Lewis was released on bond, he was detained by the police for possessing a firearm. A search conducted during that detention revealed live ammunition in his pocket. This resulted in a revocation of his bond. Even Lewis's own mother testified at the hearing that her son was considered by some to be a leader and that he occasionally engaged in adult behavior.

At the juvenile-transfer hearing, the circuit court considered all the factors required by statute:

> (1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

3

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

Ark. Code Ann. § 9-27-318(g). After assessing the credibility of the witnesses and considering the weight to be given the evidence, the circuit court entered an order addressing the statutory factors and denying Lewis's motions to transfer.

In determining a motion to transfer, a circuit court shall order the case transferred to another division of the circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to

4

the allegation sought to be established. *Z.T.*, *supra*. We will not reverse a circuit court's determination of whether to transfer a case unless the decision is clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id*. Given the evidence presented to the circuit court below, we agree with counsel that the transfer decision does not provide a basis for a meritorious appeal and affirm.

Based on the foregoing, we grant counsel's motion to withdraw. In so doing, we recognize our prior case law in which we have indicated that such requests should be denied due to the interlocutory nature of the appeal. *See R.J.W. v. State*, 2017 Ark. App. 382; *Nichols v. State*, 2015 Ark. App. 12. However, in this case, it is clear from our record that appellate counsel was appointed by our court solely for the limited purpose of perfecting Lewis's appeal.[3] Appellate counsel has now completed the limited task for which he was appointed; therefore, we grant his motion to withdraw.

Affirmed; motion to withdraw granted.

KLAPPENBACH, SWITZER, and HIXSON, JJ., agree.

GLADWIN and VAUGHT, JJ., dissent.

---

[3]On January 17, 2019, trial counsel filed a motion to withdraw as the attorney on appeal. In the motion, trial counsel stated that as a public defender, he could not be paid to prosecute the appeal. Trial counsel noted that he had consulted with another licensed attorney experienced in appellate work and that the other attorney was willing to accept substitution as "counsel on this appeal." Trial counsel also noted in his motion that Lewis had no objection to his withdrawal as his "appointed counsel on appeal" or to the appointment of the other attorney as his counsel "for purposes of the appeal." Trial counsel then requested that he be relieved as counsel and that the other attorney be appointed to "complete the appeal." We granted counsel's motion on January 30, 2019.

**LARRY D. VAUGHT, Judge, dissenting**.  I dissent from the decision of the majority in this case because I do not believe that *Anders* and Rule 4–3(k) apply to interlocutory juvenile-transfer appeals. Therefore, I would deny counsel's motion to withdraw and order counsel to file a merit brief.

Rule 4–3(k) traces its history back to 1963 when the United States Supreme Court established that an accused has a constitutional right to appointed counsel on a first appeal from a criminal conviction. *Douglas v. California*, 372 U.S. 353, 356 (1963). Later, the Supreme Court held that appointed counsel on a first appeal from a criminal conviction may seek to withdraw from a meritless appeal. *Anders v. California*, 386 U.S. 738, 744 (1967). The Court in *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987), explained the no-merit procedure established in *Anders* was "a prophylactic framework" that is relevant when, and only when, a litigant has a previously established constitutional right to counsel. However, in *Smith v. Robbins*, 528 U.S. 259, 273 (2000), the Court stated: "We did not say that our *Anders* procedure is the *only* prophylactic framework that could adequately vindicate this right." Instead, the Court described the *Anders* procedure as merely one method of satisfying the requirements of the Constitution for indigent criminal appeals. *Id*. at 276. "States may—and, we are confident, will—craft procedures that, in terms of policy, are superior to, or at least as good as, that in *Anders*." *Id*. at 276.

With these principles in mind, the Arkansas Supreme Court adopted Rule 4–3(k) as our *Anders* procedure. Rule 4–3(k)(1) provides:

> (k) Withdrawal of Counsel.
>
> (1) Any motion by counsel for a defendant in a criminal or a juvenile delinquency case for permission to withdraw made after notice of appeal has been

given shall be addressed to the Court, shall contain a statement of the reason for the request and shall be served upon the defendant personally by first-class mail. A request to withdraw on the ground that the appeal is wholly without merit shall be accompanied by a brief including an abstract and Addendum. The brief shall contain an argument section that consists of a list of all rulings adverse to the defendant made by the circuit court on all objections, motions and requests made by either party with an explanation as to why each adverse ruling is not a meritorious ground for reversal. The abstract and Addendum of the brief shall contain, in addition to the other material parts of the record, all rulings adverse to the defendant made by the circuit court.

Ark. Sup. Ct. R. 4–3(k)(1) (2019). This rule allows counsel for a defendant "in a criminal or juvenile delinquency" appeal to seek permission to withdraw. Considering the Supreme Court's holdings in *Douglas*, *Anders*, and *Finley*, I believe this procedure to withdraw applies to appointed counsel only on a first appeal from a criminal conviction or juvenile adjudication—not interlocutory appeals in such cases. The Supreme Court has not extended *Anders* to appeals beyond the first right of appeal of criminal convictions. In *Finley*, the Court stated that *Anders* did not set down an independent constitutional command that all lawyers, in all proceedings, must follow these particular procedures. 481 U.S. at 554–55. In that case, the Court held that *Anders* does not apply to collateral postconviction proceedings. *Id*. at 555.

The language of Rule 4–3(k) further supports my position. Interlocutory juvenile-transfer appeals are not expressly included in Rule 4–3(k). Other language in Rule 4–3(k)(1) suggests it applies only to the first right of appeal of criminal or juvenile-delinquency orders and not interlocutory ones because the rule requires *all* rulings adverse to the defendant to be listed and addressed in the no-merit brief. In contrast, Rule 4–8(a)(1) and Rule 6–9(i), which allow for no-merit appeals from involuntary-commitment cases and DHS matters, specifically provide that the no-merit briefs filed therein need only address those adverse

7

rulings arising from the hearing from which the appeal is made. Ark. Sup. Ct. R. 4-8(a)(1), 6-9(i). Thus, Rules 4-8 and 6-9 contemplate the potential interlocutory nature of appeals arising thereunder. If our supreme court had intended for Rule 4-3(k) to apply to the appeal of interlocutory orders in a criminal or juvenile context, it could have easily included language similar to that in Rules 4-8 and 6-9. It did not.

One need look no further than the title of Rule 4-3(k) to discover that the purpose of the rule does not contemplate the no-merit procedure in the context of an interlocutory appeal of a juvenile-transfer order. Rule 4-3(k) is entitled "Withdrawal of counsel." By its terms, the relief being sought under the rule is the motion to be relieved. If our court were to agree that there is no merit to an appeal of a juvenile-transfer order, given the interlocutory nature of the appeal, counsel should not be relieved because the case is going to continue.

This was our holding in *R.J.W. v. State*, 2017 Ark. App. 382. There, this court was faced with an interlocutory no-merit appeal of a juvenile-transfer case. We affirmed the circuit court's granting of the motion to transfer to the circuit court but refused to allow counsel to withdraw due to the interlocutory nature of the appeal. In doing so, we noted that because no trial or direct appeal (in the event of a conviction) had occurred, the case had not concluded, and counsel should not be allowed to withdraw. *R.J.W.*, 2017 Ark. App. 382, at 6 (citing *Nichols v. State*, 2015 Ark. App. 12). Where is the logic in agreeing with counsel that the appeal has no merit but then refusing to allow counsel to withdraw— the stated purpose of Rule 4-3—because of the interlocutory nature of the proceeding? This

nonsensical result is yet another reason why Rule 4–3(k) should not apply to interlocutory appeals. I would overturn *R.J.W.*

Applying Rule 4–3(k) to interlocutory appeals in the criminal and juvenile-delinquency context presents another problem. If the majority is correct and Rule 4–3(k) applies to the interlocutory appeal of juvenile-transfer orders, then pursuant to the rule, counsel is required to list and address *all* adverse rulings in the no-merit brief. In this case, there was one adverse ruling that was not addressed in counsel's no-merit brief. The record reveals that while Lewis was out on bond on the charges in 46CR-17-737 and 46CR-17-738, he was detained by the police for possessing a firearm, and a search revealed live ammunition in his pocket. The State moved to revoke Lewis's bond, and the circuit court granted the motion. This is an adverse ruling; however, counsel did not abstract or address it, thereby violating Rule 4–3(k)(1).

I acknowledge that the adverse ruling regarding the bond revocation is unrelated to the denial of the juvenile-transfer motion and is an issue that cannot be raised by interlocutory appeal. Thus, it makes sense that in an interlocutory appeal such as this, the only adverse rulings that should be addressed are those related to the actual order on appeal. The adverse rulings unrelated to the juvenile-transfer order would then be addressed on direct appeal from the conviction. However, for this court to so hold would be to ignore the plain language of Rule 4–3(k)(1) that requires a list of *all* rulings adverse to the defendant along with an explanation as to why each adverse ruling is not a meritorious ground for reversal. The rule as worded includes adverse rulings unrelated to the juvenile-transfer order.

9

This illogical result is yet another reason why Rule 4–3(k) should not apply to interlocutory juvenile-transfer appeals.

For all these reasons, I would deny counsel's motion to withdraw and order rebriefing on the merits of the interlocutory order denying Lewis's motion to transfer his case to juvenile court. Accordingly, I dissent.

GLADWIN, J., joins.

*Joseph C. Self*, for appellant.

One brief only.